# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ERIC HUDSON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: **2:05-CV-2194-RDP** |
| } | |
| **R. JAMES NICHOLSON, Secretary of** } | |
| **Veterans Affairs; VA Hospital** } | |
| **(Tuscaloosa); VA Hospital** } | |
| **(Birmingham);** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

The court has before it Defendants' Motion to Dismiss (Doc. # 9) filed March 8, 2006. The motion is now under submission and, for the reasons outlined below, the court finds that Plaintiff's claims are due to be dismissed.

**I.     Procedural History**

This case was filed by Plaintiff, who is proceeding *pro se*, on October 24, 2005. (Doc. # 1). On March 8, 2006, Defendants moved to dismiss Plaintiff's complaint. (Doc. # 9). By order dated March 10, 2006, the court afforded Plaintiff an opportunity to oppose the motion by March 22, 2006, and Defendants an opportunity to reply to Plaintiff's opposition by March 29, 2006. (Doc. # 12).

On March 17, 2006, Plaintiff filed a six-page document titled "Opposition" wherein Plaintiff generally discussed a number of matters and concluded by stating "I have no rebuttal to the order you've requested and your [sic] in charge." (Doc. # 13, at 6). Thereafter on March 23, 2006, the court held a telephone conference during which Plaintiff orally requested additional time to seek the assistance of an attorney and to oppose Defendants' motion. (Doc. # 14). The court granted

Plaintiff's request, staying the case until April 20, 2006, and giving Plaintiff until May 4, 2006 to oppose the motion, and Defendants until May 9, 2006 to reply. (Doc. # 14).

On May 4, 2006, Plaintiff did not file an opposition, but again requested additional time to seek the assistance of an attorney and to oppose Defendants' motion. (Doc. # 16). The court held a telephone conference on May 4, 2006 to discuss Plaintiff's request and thereafter again gave Plaintiff more time to seek counsel and either have counsel submit an opposition to Defendants' motion, or to oppose the motion himself if he was unable to obtain counsel to represent him. (Doc. # 16). The court cautioned Plaintiff that failure to oppose the motion by June 16, 2006 may result in dismissal of his case. (Doc. # 16). Although Defendants were given until June 30, 2006 to submit any reply (Doc. # 16), counsel for Defendants has indicated to the court that she will not submit any additional materials in support of the motion. Accordingly, the motion was properly under submission, without oral argument, on June 16, 2006.

## II.     Plaintiff's Allegations

Plaintiff's complaint states that it seeks monetary damages for alleged mistreatment by the Veterans Administration ("VA"). In addition to his initial complaint, which was in the form of a letter to the court, Plaintiff has submitted several other letters to the court that detail myriad allegations, many of which are unrelated to any actions taken by the Defendants in this case. Nonetheless, the court will attempt to summarize Plaintiff's allegations, organized below by date of submission to the court.[1]

---

[1] The court generally has reproduced Plaintiff's claims verbatim in the form in which they were submitted to the court with modifications made only when necessary for clarity.

A.      **October 24, 2005 Initial Complaint  (Doc. # 1)**

Plaintiff seeks $7.5 million in damages for "sever[e] pain" caused by the VA "throughout these years" including:  (1) refusal to treat cavities on unspecified dates by the dental clinic; (2) mistreatment in 1999 by nurse practitioner "Floyd" in the form of "let[ting] me swell," and not prescribing medicine; (3) rape and "feeding me my own feces" on unspecified dates while Plaintiff was a patient at the VA; (4) mistreatment by Doctor Anderson and nurse practitioner Floyd on unspecified dates in the form of "they knew of me needing a hip replacement, and had me believing that my problem was in my back;" (5)  failure to admit Plaintiff to the hospital on unspecified dates when he was sick; and (6)  putting a "red flag . . . that let them know that I was there, and they drugged me in my sleep" on unspecified dates resulting in Plaintiff's fear that the VA will "sabotage my stay . . . [in] any Hospital in the United States." (Doc. # 1, at 4-8).

Plaintiff's complaint attaches a February 10, 2005 letter to him from the Department of Veterans Affairs in Tuscaloosa, Alabama which indicates that he was discharged from the Tuscaloosa VA Medical Center on January 22, 1999 after treatment for chronic paranoid schizophrenia. (Doc. # 1, at 12).  The letter states "[t]here is nothing to suggest that you attempted to receive further medical treatment at the Tuscaloosa VAMC after your inpatient discharge." (Doc. # 1, at 12).  The letter indicates that Plaintiff is receiving follow-up mental health care at the Birmingham VA Medical Center.  (Doc. # 1, at 12).

B.      **October 26, 2005 Letter (Doc. # 3)**

Plaintiff's letter requests "freedom from the VA Hospital, cost of living without using the VA Hospital for dental care, optometry appointments as well as hospital coverage." (Doc. # 3, at 1).  Plaintiff further alleges that the VA has "cause[d him] to suffer tremendously . . . . [and] has

3

affected my entire family causing my daughter to be gay and ending up in Byrce Hospital." (Doc. # 3, at 2). Plaintiff specifically claims that "Doctor Nelves sabotage Hospital stays since 1981 with UAB with the clout he has alone caused me to suffer for over twelve years when I didn't have too." (Doc. # 3, at 2).

  C.  **October 31, 2005 Letter (Doc. # 5)**

Plaintiff further alleges that the VA: (1) has been "prejucide[d] towards me;" (2) "would control my money, by treating me as if I had a guardian and wouldn't let me have money but once a week" while he was a hospital patient; (2) "would keep me on lock ward" and denied him privileges; (3) attempted to put Plaintiff in a veterans home in lieu of awarding disability benefits; (4) medicated him with "eight hundred milligrams [of] throazine a day;" (5) "put[] a female in my life to keep my mind occupied and off of what they had done to me;" (6) "us[ed] the police to pick me up off the streets and put me in jail and then put me in the Hospital Tuscaloosa, so that they could cause abomination of Yahweh towards me;" (7) neglected him and directed his insurance to stop paying for doctor visits because he brought a lawsuit against the VA; and (8) used his mother to have him committed to the VA Hospital and then drugged him in his sleep "and put me on the street to see if I would kill myself or anyone else, meaning my wife." (Doc. # 5). Plaintiff's letter also details other family and personal matters that neither the filing itself nor anything else in the record suggests is related to his allegations against the VA. Plaintiff believes that at least some of the VA's actions were "because I was a Black man." (Doc. # 5, at 2).

Plaintiff's letter attaches what appears to be a request for a "law to protect the person or persons that are committed to any mental facility or State or government prison" (Doc. # 5, at 8-9),

and several records from the UAB Department of Family Medicine in Birmingham Alabama which chronicle office visits by Plaintiff on various dates in 2004 and 2005. (Doc. # 5, at 10-16).

### D.   November 22, 2005 Letter (Doc. # 6)

In his November 22, 2005 letter, Plaintiff requests "for this case to move in an timely manner and that's why I'm asking you for DUE PROCESS." (Doc. # 6, at 1)(emphasis in original).

### E.   March 16, 2006 Letter (Doc. # 13)

In response to Defendant's March 8, 2006 motion to dismiss, Plaintiff submits what appears to be an explanation of how his personality has changed throughout the years, which Plaintiff blames on the government and the lack of respect he has received from others in return for his military service. (Doc. # 13). Plaintiff details concerns about "things that happened to me while serving Uncle Sam, everything that happen in Germany and basic training as well as AIT." (Doc. # 13, at 1). Plaintiff concludes by noting, "I have no rebuttal to the order you've requested and your still in charge." (Doc. # 13, at 6).

### F.   March 24, 2006 Letter and X-Rays (Doc. # 15)

Plaintiff indicates that he is submitting x-rays taken at Medical Center East by "Dr. Slappy's Office" sometime during September 2004. (Doc. # 15, at 1). Plaintiff claims that he has not been able to get an attorney because he has "been blackballed here in the State of Alabama as well as the rest of the Country." (Doc. # 15, at 1). Plaintiff alleges that he has not seen his primary care doctor since September 2004 due to "this hold thing," and he notes again that the Dental Clinic has failed to fix his cavities. (Doc. # 15, at 1).

Attached to the letter are appointment reminders from the Birmingham VA Medical Center for appointments on December 14, 2005, December 28, 2005, and January 11, 2006. (Doc. # 15, at

2-6). Also attached are doctors' diagnosis summaries dating from October 2004 to April 2005 which describe Plaintiff's back and hip complaints including degenerative arthritis in his lumbar spine and left hip. (Doc. # 15, at 7-14).

### G.     May 22, 2006 Letter (Doc. # 17)

Plaintiff generally complains that "the VA caused me grief and heartache" and that his "military career was sabotaged because of this underhanded way the Government handle[d] this situation," although he does not describe with any clarity to what situation he is referring. (Doc. # 17, at 1). Plaintiff's letter mentions the Government's motion to dismiss but does not directly address its dismissal arguments. (Doc. # 17, at 1). Plaintiff's letter attaches the following documents: (1) April 29, 2006 notice of denial of credit from AmSouth Bank; (2) May 6, 2006 notice of denial of credit from HSBC Auto Finance; (3) April 30, 2006 notice of overdue account from UAB Family Medicine; and (4) May 3, 2006 letter and attachments from Department of the Army regarding PFC (Ret) Eric Q. Hudson's request for correction of military records. (Doc. # 17, at 2-11).

### H.     May 9, 2006 Letter from Cornelius Hudson (Wife of Eric Hudson) (Doc. # 18)

This letter, which was purportedly signed by Plaintiff's wife, explains that "[t]he Government has put all kinds of obstacles in our life," noting that they recently considered divorce "because of the stress that the VA and the Government has place on us, that landed me in the VA Hospital in Tuskeegee." (Doc. # 18, at 1). The letter goes on to say "[a]fter failing at trying to suiting the VA Tuscaloosa in 2003 for what my Husband was sure happened in 1987, the Government put an all out attack on us, with no hold barred trying to bring both my Husband and I down." (Doc. # 18, at 2).

The letter alleges: (1) in 2003 and 2004, Plaintiff sought treatment for gas/indigestion at the "VA Birmingham Emergency" but was ignored; (2) in September 2004, Plaintiff's request for a remote controlled chair from "Dr. Anderson" was denied; and (3) in January 2004, the Tuscaloosa VA "got his Mother to commit him to UAB Hospital where they took advantage of my Husband by drugging him up and sending him home to me sick as hell." (Doc. # 18, at 2).

I.     **Packet of Letters Filed May 26, 2006 (Doc. # 19)**

After expressing concern that this court may not have received all of correspondence that Plaintiff has submitted in the past seven months, Plaintiff filed a packet of correspondence that included both letters already received by the court and letters that had not already been filed. (Doc. # 19). The packet contained the following new correspondence not previously submitted to the court: (1) a letter dated March 26, 2006 which states Plaintiff's belief that his medical discharge "was not of good reasoning . . . and that this whole thing was a scheme;" (2) a courtesy copy of a letter sent to the VA Hospital dated May 16, 2006 requesting emergency room records "from the dates of January 2003 until;" (3) a "Birmingham VAMC and Community-Based Outpatient Clinic Score Card" dated March 18, 2006 regarding dental service rendered to Plaintiff; (4) a VA "Request for and Authorization to Release Medical Records or Health Information" signed by Eric Hudson, dated May 19, 2006, and requesting "PC and ER records from January 2003 to present;" (5) a letter dated May 2, 2006 from "CapitalOne auto finance" to Eric Hudson declining request for credit; (6) a letter dated March 27, 2006 summarizing Plaintiff's "stay at Fort Gordon Mental Hospital [which] tells and reveals that there were some false statements made in receiving of my Disability and Doctor Nevels knew that they were lies;" and (7) a letter dated April 3, 2006 detailing complaints about

Plaintiff's military service, his belief that he has been followed, watched, and targeted, and his unsuccessful attempts to contact various attorneys about representation.

The packet of letters also includes what appears to be an explanation of what Plaintiff seeks in this lawsuit. (Doc. # 19, at 23-27). He explains "the rape is not what I suiting for this time." (Doc. # 19, at 23). The letter also states that in 1987, after Plaintiff left the VA Hospital in Tuskeegee, the "notion came over me to shoot the President . . . . Anyway I shot a female by the name of Margaret Parker for trying to rip me off of my drugs . . . and was put in jail in Tuskegee for a month or more." (Doc. # 19, at 23). At some point thereafter, Plaintiff complains that he was admitted to the VA Hospital in Tuscaloosa where they "drugged me out of my mind . . . in order to get information out of me." (Doc. # 19, at 24). Plaintiff states, "This case is not to reward me with monetary reward, but to acknowledge the facts that this has been covered up for over four hundred years and more." (Doc. # 19, at 26). Plaintiff also increases the amount of his requested damages to $753 million dollars. (Doc. # 19, at 26). Plaintiff notes that he needs certain medical records and alleges that "the Government has destroyed my credit." (Doc. # 19, at 27).

      **J.**      **June 2, 2006 Letter (Doc. # 20)**

Plaintiff requests "a motion to proceed" and expresses his belief that "these people . . .has been taking advantage of me for long enough using me for their selfish needs, coming into my home at will, doing whatever they do while in my home, what have you or your people founded out that you didn't already know." (Doc. # 20). Plaintiff reiterates his allegation that the VA has neglected him "for over twenty years" and expresses concern that he now has "a record longer than your arm, put on me, because I would accept taking care of these baby hatching women in Birmingham."

(Doc. # 20).  Plaintiff further questions "is it right to tell you about this or are you involved in it as well." (Doc. # 20).

### K.    June 15, 2006 Packet of Clinical Records from 1979 and 1981 (Doc. # 21)

Plaintiff filed, under seal, clinical records from various doctors who examined and diagnosed Plaintiff in 1979 and 1981.  To protect Plaintiff's confidentiality, the court will not summarize the medical records herein.  However, the court notes that due to the dated nature of the records, they are not relevant to the issues before the court in this case.

## III.   Discussion

Although none of Plaintiff's submissions to the court mention any statutory authority for his allegations, the court agrees with Defendants that Plaintiff's complaint, when liberally construed, likely purports to allege violations of the Federal Tort Claims Act ("FTCA") because it seeks "money damages...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. 1346(b).  The court groups Plaintiff's allegations into three categories: (1) specific accusations leveled against medical professionals regarding medical decisions about his care rendered on certain dates;[2] (2) general accusations regarding care he received on unspecified dates while he was a patient at one of the VA Hospital locations;[3] and (3) general

---

[2]  These include: (1) certain medical decisions in 1999 by nurse practitioner "Floyd;" (2) failure of the VA Hospital in Birmingham to treat Plaintiff in the emergency room in 2003 and 2004 when he was sick; (3) in January 2004, the VA Hospital in Tuscaloosa "got [Plaintiff's] Mother to commit him to UAB Hospital where they took advantage of [him] by drugging him up;" (4) denial of Plaintiff's request for a remote controlled chair by "Dr. Anderson" in September 2004; and (5) refusal to treat Plaintiff's cavities in 2005 and 2006.

[3]  These include: (1) putting a "red flag . . . that let them know that I was there" and drugging him to "get information;" (2) controlling his money; (3) keeping him on "lock ward" and restricting

complaints about actions allegedly taken by the "Government" or others.[4]  The court finds that all of Plaintiff's claims are due to be dismissed both because Plaintiff has failed to exhaust his administrative remedies and because Plaintiff's complaint fails to state any claim upon which relief can be granted.

### A.     Failure to Exhaust Administrative Remedies

The court first addresses Defendant's Rule 12(b)(1) argument that this court lacks subject matter jurisdiction over Plaintiff's claims in this case because Plaintiff has failed to exhaust his administrative remedies. *See, e.g., Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1237 (11th Cir. 2002)(noting that the administrative notice requirement of 28 U.S.C. § 2765 "is jurisdictional and cannot be waived" and therefore is properly addressed as a Rule 12(b)(1) motion).  It is axiomatic that before filing a lawsuit in federal court again the United States under the FTCA, a plaintiff must first file an administrative tort claim with the appropriate federal agency.  28 U.S.C. § 2675(a).  *E.g., Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  It is the plaintiff's burden of pleading and proving compliance with the statutory requirement of presenting his FTCA claim in writing to appropriate federal agency within two years after claim accrues and before filing suit. *Wang v. U.S.*, 61 Fed.Appx. 757, 759 (2d Cir. 2003).  Because exhaustion of administrative remedies

---

his privileges; and (4) medicating him with "eight hundred milligrams [of] throazine a day." Although some of Plaintiff's letters also mention rape and "feeding me my own feces," Plaintiff later explains to the court "the rape is not what I suiting for this time." (Doc. # 19, at 23).

[4] These include: (1) "sabotaging" Plaintiff's hospital stays at UAB; (2) attempting to admit Plaintiff to a veterans home rather than awarding disability benefits; (3) "sabotage" of his military career; (4) destruction of his credit; (5) entering his home "at will, doing whatever they do while in my home;" (6) "using the police to pick me up off the streets and put me in jail and then put me in the Hospital Tuscaloosa, so that they could cause abomination of Yahweh towards me;" and (7) directing his insurance to stop paying for doctor visits.

is a jurisdictional prerequisite to maintaining an FTCA claim against the United States, this court lacks subject matter jurisdiction over any and all claims for which Plaintiff has not first filed an administrative claim. *Lykins v. Pointer Inc.*, 725 F.2d 645, 646 (11th Cir. 1984).

A review of the entirety of Plaintiff's submissions reveals no allegation or proof that Plaintiff has fulfilled his burden to show that he exhausted his administrative remedies prior to filing this lawsuit.[5]  Moreover, the Government has presented affidavit testimony[6] – which the Plaintiff has not challenged – that a search of the files and records of the Office of Regional Counsel revealed no administrative claims filed by Plaintiff concerning any of the allegations at issue in this case. (Doc. # 10, Ex. C).

Although he is proceeding *pro se* in this matter, the court notes that Plaintiff is undoubtedly aware of the procedure and need to file an administrative tort claim with the VA given that he previously filed two administrative claims with the VA in 2003 alleging that he had been raped in

---

[5] Although Plaintiff's initial complaint attached correspondence from the Tuscaloosa Department of Veterans Affairs Medical Center to Plaintiff in response to a letter he sent on January 10, 2005 to the Undersecretary of Veterans Affairs, that correspondence does not shed any light on the question of whether Plaintiff has exhausted his administrative remedies. Notably, however, the letter does indicate that Plaintiff has not received any medical treatment from the Tuscaloosa VA since January 1999. (Doc. # 1, at 12). Thus, any claims Plaintiff makes in his October 2005 complaint against the Tuscaloosa VA for treatment are time-barred under the six-year statute of limitations for claims against the United States. 28 U.S.C. § 2401.

[6] As noted earlier, this portion of Defendant's motion to dismiss – which relies in part on an affidavit from Regional Counsel for the Department of Veterans Affairs – is properly characterized as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Thus, this court is free to consider Defendant's affidavit in its analysis of subject matter jurisdiction without converting the motion to dismiss to a motion for summary judgment under Rule 56. *See, e.g., Morrison v. Amway Corporation*, 323 F.3d 920, 924-925 (11th Cir. 2003) (explaining significantly different standards governing element versus jurisdictional challenges and recognizing in context of 12(b)(1) factual motions that consideration of extrinsic evidence such as testimony and affidavits is permissible and that "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

1987 while he was a VA patient.[7] (Doc. # 10, Ex. C). Plaintiff even submitted the appropriate SF 95 forms ("Claim for Damage Injury or Death") in support of his administrative claims, which were denied. (Doc. # 10, Ex. C). In fact, Plaintiff filed his 2003 administrative claims after another judge of this court dismissed a 2002 lawsuit based on the same allegations of rape *because Plaintiff had failed to exhaust his administrative remedies. Eric Quintin Hudson v. United States Army, et al.*, CV-02-BE-2694-S (Doc. # 36)(Order of Dismissal). Nonetheless, for whatever reason, Plaintiff chose not to pursue his administrative remedies prior to filing his claims in *this* lawsuit, and that decision is fatal to his complaint in this case because the court lacks subject matter jurisdiction to consider his claims.

### B. Failure to State a Claim

The court also agrees with Defendants that Plaintiff's complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). Conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

---

[7] By Plaintiff's own admission, neither of those alleged rapes is part of this case. (Doc. # 19, at 23)("[T]he rape is not what I suiting for this time."). In any event, claims based upon events that allegedly occurred in 1987 are time-barred.

"Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss . . . . particularly [] when the parties are proceeding pro se." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Courts do - and should - show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, [] or to rewrite an otherwise deficient pleading in order to sustain an action []." *GJR Investments, Inc.*, 132 F.3d at 1369 (internal citations omitted).

Against this legal standard, and even providing Plaintiff the appropriate level of leniency, it is clear that Plaintiff's stream-of-consciousness complaint – liberally construed to include all of his submissions to the court[8] – fails to state any claim upon which relief can be granted and shows no possibility of being amended so as to do so. Plaintiff's allegations lack colorable merit and are, therefore, due to be dismissed.

**IV.    Conclusion**

For the reasons outlined above, the court finds that Plaintiff's claims in this case are due to be dismissed without prejudice. A separate order will be entered.

---

[8] The court's decision to consider all of Plaintiff's submissions to the court - including documents and other attachments to Plaintiff's letters- does not require the court to convert the Government's Rule 12(b)(6) motion to a Rule 56 motion. In this case the court has considered additional documents submitted by Plaintiff - not the Government - with regard to the Rule 12(b)(6) motion. Because Plaintiff is proceeding *pro se*, the court has liberally construed his "complaint" to include all of his submissions to the court given that their authenticity has not been challenged by the Government and because, according to Plaintiff, those attached documents are central to his claims in this case. *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)(noting that conversion of a Rule 12(b)(6) motion is not required when attached documents are (1) central to the plaintiff's claim and (2) undisputed).

**DONE** and **ORDERED** this ___27th___ day of June, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE